UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **VIRGIL SMITH** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-2835** |
| **DARREL VANNOY, WARDEN** | **SECTION: "J"(1)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

### I. State Court Factual and Procedural Background

Petitioner, Virgil Smith, is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. On October 30, 2007, Smith was charged by a bill of information with attempted simple robbery in violation of La. Rev. Stat. § 14:65 and second degree battery in violation of La. Rev. Stat. § 14:34.1.[1] On February 25, 2008, the state amended count one of the bill of information to charge Smith with simple robbery.[2] After a trial, a jury found Smith guilty

---

[1] State Rec., Vol. 1 of 7, Bill of Information dated October 30, 2007.
[2] State Rec., Vol. 1 of 7, Amended Bill of Information dated February 25, 2008.

as charged.[3] On March 19, 2008, the trial court sentenced Smith to seven years imprisonment as to count one and five years imprisonment as to count two, each term of imprisonment to be served at hard labor.[4] The state filed a multiple bill.[5] On April 8, 2008, the trial court adjudicated Smith a fourth habitual felony offender and resentenced him to life imprisonment at hard labor as to each count.[6]

On March 27, 2009, the Louisiana First Circuit Court of Appeal affirmed Smith's convictions and sentences.[7] Smith filed a writ application with the Louisiana Supreme Court.[8] The Louisiana Supreme Court denied relief on January 8, 2010.[9] The Louisiana Supreme Court denied Smith's request for rehearing on June 4, 2010.[10]

Smith filed an application for post-conviction relief on August 2, 2011.[11] On February 1, 2012, the state district court denied relief.[12] Smith's related writ application to the Louisiana First Circuit was denied on May 21, 2012.[13] His request for rehearing was not considered.[14] The Louisiana Supreme Court denied his related writ application on November 9, 2012.[15]

On February 8, 2015, Smith filed an application for post-conviction relief related to his 2009 conviction for first degree murder.[16] On July 19, 2017, Smith filed a petition for writ of

---

[3] State Rec., Vol. 1 of 7, minute entry dated February 26, 2008; minute entry dated February 28, 2008; verdicts dated February 28, 2008; trial transcript of February 26, 2008; State Rec., Vol. 2 of 7, trial transcript (con't) of February 26, 2008; trial transcript of February 28, 2008; State Rec., Vol. 3 of 7, trial transcript (con't) of February 28, 2008.
[4] State Rec., Vol. 1 of 7, minute entry dated March 19, 2008; State Rec., Vol. 3 of 7, sentencing transcript of March 19, 2008.
[5] State Rec., Vol. 1 of 7, Multiple Offender Bill dated February 29, 2008.
[6] State Rec., Vol. 1 of 7, minute entry dated April 8, 2008; State Rec., Vol. 3 of 7, transcript of April 8, 2008.
[7] State v. Smith, No. 2008 KA 1893, 2009 WL 838600 (La. App. 1st Cir. March 27, 2009); State Rec., Vol. 4 of 7.
[8] State Rec, Supp. Vol. 1 of 1, Writ Application, 09 K 947, dated April 28, 2009.
[9] State v. Smith, 24 So.3d 859 (La. 2010); State Rec., Vol. 4 of 7.
[10] State v. Smith, 38 So.3d 291 (La. 2010); State Rec., Vol. 4 of 7.
[11] State Rec., Vol. 4 of 7, Uniform Application for Post-Conviction Relief dated August 2, 2011.
[12] State Rec., Vol. 4 of 7, Order of February 1, 2012.
[13] State Rec., Vol. 5 of 7, La. 1st Cir. Order, 2012 KW 0367, dated May 21, 2012.
[14] State Rec., Vol. 5 of 7, La. 1st Cir. Order, 2012 KW 0367, dated June 15, 2012; Application for Rehearing dated June 5, 2012.
[15] State ex rel Smith v. State, 100 So.3d 832 (La. 2012); State Rec., Vol. 5 of 7.
[16] See Rec Doc. 3, p. 33 (Letter from Clerk of Court for the 22nd Judicial District Court Parish of St. Tammany dated August 18, 2017 confirming that an application was received on February 8, 2015 in a different one of petitioner's

mandamus claiming that he had filed a second application for post-conviction relief relating to the convictions in this case and requesting the Louisiana First Circuit to instruct the state district court to issue a ruling on his second application for post-conviction relief.[17] The Louisiana First Circuit denied relief finding that there was no record of a 2015 application related to the charges in this case.[18]

On September 19, 2018, Smith filed a motion to amend his sentence.[19] The state district court denied the motion on January 10, 2019.[20] The Louisiana First Circuit denied petitioner's related writ application on May 28, 2019.[21] The Louisiana Supreme Court denied his related writ application on September 23, 2020.[22]

On October 6, 2020, Smith filed the instant federal application seeking habeas corpus relief.[23] Smith did not list any grounds for relief in his petition nor did he provide any supporting facts.[24] In his memorandum, Smith states that he needs "one day to prove my claims if it is no more than one of them out of (9) nine or (10)," although he does not identify those claims.[25] In his 2011 application for post-conviction relief, Smith raised the following claims:  (1) insufficient evidence; (2) his multiple bill proceeding was invalid and unconstitutional; (3) the prosecution knowingly presented false testimony; (4) his enhanced sentences violate Louisiana Rev. Stat. § 15:529.1; (5) the trial judge erred in not recusing himself; (6) the state used false convictions to

---

cases (No. 334349) but that the only application for post-conviction relief related to this case (No. 437672) was previously ruled upon on February 1, 2012).
[17] State Rec., Vol. 6 of 7, Petition for Writ of Mandamus, 2017 KW, 1023, dated July 19, 2017.
[18] State v. Smith, No. 2017 KW 1023, 2017 WL 3891659 (La. App. 1st Cir. Sep. 5, 2017); State Rec., Vol. 6 of 7.
[19] State Rec., Vol. 4 of 7, Motion to Amend Sentence to Conform to Applicable Statutory Provisions of Act No. 45; S.B. No. 126, which Enacted La. R. S. 15:308: Correction of an Illegal Sentence dated September 19, 2018.
[20] State Rec., Vol. 4 of 7, Order of January 10, 2019.
[21] State v. Smith, No. 2019 KW 0335, 2019 WL 2291975 (La. App. 1st Cir. May 28, 2019); State Rec., Vol. 6 of 7.
[22] State v. Smith, 301 So. 3d 1181 (La. 2020); State Rec., Vol. 6 of 7.
[23] Rec. Doc. 3.
[24] Id., at pp. 5-10.
[25] Id., at p. 19.

enhance his sentences and his sentences are unconstitutionally excessive; (7) he was denied effective assistance of counsel when his attorney waived Smith's right to be present at a hearing on his motion to continue; (8) he was denied effective assistance of counsel when he was denied the right to confront and cross-examine witnesses; (9) he was denied the right to appeal due to an incomplete record; and (10) ineffective assistance of counsel with regard to his multiple bill hearing.[26] In his traverse, petitioner appears to claim that: (1) he was not charged by a bill or indictment or information; (2) there is no transcript of the grand jury proceedings or a "72 hour hearing;" (3) he was not read his "right to counsel so on or speedy trial;" and (4) vindictive prosecution.[27]

On January 15, 2021, the state filed its response arguing that the application should be dismissed as untimely.[28] Smith filed a traverse to that response.[29] For the following reasons, the Court finds that the application is indeed untimely.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") includes a statute of limitations for petitioners seeking federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Specifically, the AEDPA provides:

A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

---

[26] State Rec., Vol. 4 of 7, Application for Post-Conviction Relief and Memorandum of Law in Support Thereof dated August 2, 2011.
[27] Rec. Doc. 20, pp. 18-19.
[28] Rec. Doc. 15.
[29] Rec. Doc. 20.

    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

    In its response, the state argues that Subsection A is controlling in the instant case.[30] Regarding that subsection, the United States Fifth Circuit Court of Appeals has explained:

    The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court. Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003).

Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008).

    As noted, the Louisiana Supreme Court denied Smith's direct-review writ application on January 8, 2010. Therefore, his state criminal judgment became final for AEDPA purposes ninety days later on April 11, 2010, when the time for him to file a petition for writ of certiorari expired.

    While not addressed by the state in its response, the Court notes that Smith had a state court pleading which was not timely and/or properly filed and does not alter the calculation of finality of his conviction. On April 28, 2010, Smith submitted to the Louisiana Supreme Court a request for rehearing of his direct-review writ application.[31] Smith's request for rehearing was not timely

---

[30] Rec. Doc. 15, pp. 8-9.
[31] State Rec., Supp. Vol. 1 of 1, Motion for Rehearing under Art. 922 signed April 28, 2010 and received May 5, 2010.

filed under La. S. Ct. Rule IX § 1 or procedurally proper under La. S. Ct. Rule IX § 6 and does not change the finality calculation.

The first Rule requires that an application for rehearing be filed "before the fourteenth calendar day" after the Court's underlying ruling and "no extension therefor will be granted." La. S. Ct. Rule IX § 1. Smith's request for rehearing was signed and submitted by him on April 28, 2010, which was one hundred and ten (110) calendar days after the Louisiana Supreme Court denied his direct-review writ application on January 8, 2010. The request for rehearing was not timely filed under the state court rules.

Under the second Rule, the Louisiana Supreme Court will not hold a rehearing on a writ application which, like Smith's, was merely denied. La. S. Ct. Rule IX § 6 ("An application for rehearing will not be considered when the court has merely granted or denied an application ..."). On January 8, 2010, the Louisiana Supreme Court simply "[d]enied" Smith's post-appeal writ application without stated reasons. Thus, his request for rehearing was not procedurally proper.

In Wilson v. Cain, 564 F.3d 702, 704-05 (5th Cir. 2009), the United States Fifth Circuit considered La. S. Ct. Rule IX §§ 1 and 6 as they relate to the finality of a state conviction under the AEDPA. The Wilson court ultimately held that a timely filed motion for rehearing in the Louisiana Supreme Court should be considered in determining when a petitioner's state conviction became final. Id. at 706; see also Buniff v. Cain, 349 F. App'x 3 (5th Cir. 2009). The Fifth Circuit later made clear that a pleading that is not timely filed under these Louisiana Supreme Court rules is not properly filed for purposes of the AEDPA and is not to be included in the finality calculation. See Butler, 533 F.3d at 317; see also Thomas v. Goodwin, 786 F.3d 395, 398 n.5, 399 n.6. (5th Cir. 2015).

6

Applying these standards, it is clear that Smith's request for rehearing was procedurally improper in two ways and did not extend the finality of his conviction. First, unlike the petitioner in Wilson, Smith's request for rehearing was not timely filed under Rule X § 1. The request was signed and submitted by Smith on April 28, 2010, which was one hundred and ten (110) days after the Louisiana Supreme Court's ruling. This was outside of the fourteen (14) days allowed by the Rule. In addition, Smith sought rehearing from a ruling that "merely denied" his direct-review writ application. This is contrary to and not allowed by Rule IX § 6. His request for rehearing was not timely or proper for determining the finality of his conviction.

To reiterate, because Smith's request for rehearing filed April 28, 2010 was not properly or timely filed, his conviction was final on April 11, 2010. His federal limitations period then commenced on that date and expired one year later on April 11, 2011. However, Smith did not file his habeas petition until October 6, 2020. Thus, his application must be dismissed as untimely unless the deadline was extended through tolling.

The Court first considers statutory tolling. Regarding the statute of limitations, the AEDPA expressly provides: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). Smith did not file his application for post-conviction relief until August 2011, more than one year after the statute of limitations expired. As the state-court record shows, he had no applications for post-conviction or other collateral review pending before the state courts during the applicable one-year period. The one-year federal limitations period continued to run interrupted and expired on April 11, 2011.

Smith's post-conviction application was filed with the state district court on August 2, 2011, nearly four months after the one-year federal limitations period had already expired, and therefore could not possibly afford him any tolling benefit.[32]  See Madden v. Thaler, 521 F. App'x 316, 320 (5th Cir. 2013); Scott v. Johnson, 227 F.3d 260, 263 (5th Cir. 2000); Magee v. Cain, Civ. Action No. 99–3867, 2000 WL 1023423, at *4 (E.D. La. Jul. 24, 2010) (citing Williams v. Cain, Civ. Action No. 00–536, 2000 WL 863132, at *2 (E.D. La. June 27, 2000)), aff'd, 253 F.3d 702 (5th Cir. 2001).  Simply put, once the federal limitations period expired, "[t]here was nothing to toll." Butler, 533 F.3d at 318.

Smith appears to argue that he is entitled to a delayed commencement under Section 2244(d)(1)(B).  For the reasons that follow, Smith has failed to demonstrate that the subsection is the appropriate statutory trigger for the federal limitations period.

Section 2244(d)(1)(B) allows a petitioner to "file a habeas corpus petition within one year from 'the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action.' "  To establish a state-created impediment, "the prisoner must show that: (1) he was prevented from filing a petition, (2) by State action, (3) in violation of the Constitution or federal law." Egerton v. Cockrell, 334 F.3d 433, 436 (5th Cir. 2003).  In this case, then, Smith must show that the circumstances alleged actually **prevented** him from filing in violation of the Constitution or federal law.  Egerton, 334 F.3d at 436–37; see also Krause v. Thaler, 637 F.3d 558, 561 (5th Cir. 2011) (holding that a petitioner "must also show that the

---

[32] Even if the Court were to utilize September 2, 2010, ninety (90) days after the Louisiana Supreme Court denied Smith's request for rehearing, as the date on which his conviction became final, Smith's habeas petition would still be untimely.  Smith filed his application for post-conviction relief on August 2, 2011, three hundred and thirty-four (334) days after the one-year statute of limitations began to run.  The Louisiana Supreme Court denied his related writ application on November 9, 2012.  At that point, Smith had thirty-one (31) days remaining in which to file his habeas petition.  He, however, did not file his habeas petition until October 6, 2020, nearly eight years later.

8

[impediment] actually prevented him from timely filing his habeas petition") (emphasis in original). Whether a state-created impediment prevented a petitioner from filing a habeas petition under Section 2244(d)(1)(B) is a fact-intensive inquiry. See Pace v. DiGuglielmo, 544 U.S. 408, 416 n. 6, 125 S. Ct. 1807, 161 L.Ed.2d 669 (2005) (Section 2244(d)(1)(B) requires claim-by-claim consideration); Egerton, 334 F.3d at 438 (citing Whalem/Hunt v. Early, 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc)).

The Court rejects Smith's suggestion that there was a state-created impediment to his timely filing pursuant to 28 U.S.C. § 2244(d)(1)(B). Smith states that "the state intentionally creat[ed] a situation to stop or mark it hard for him to stay within the time limitation as contained in 28 U.S.C. § 2244(d) this is why he should not be barred, for it is no fault of his own. But something created by the State to stop of slow your petitioner down."[33] Smith appears to contend that the state district court's two-year delay in the issuance of an order denying his 2015 application for post-conviction relief related to his first degree murder conviction and the failure to file an alleged second application for post-conviction relief related to the underlying convictions in this case were state-created impediments requiring a later starting date for the one-year limitations period. Initially, the state district court's delay in ruling on his application related to his first degree murder conviction is irrelevant to this case and did not prevent Smith from timely filing the instant federal habeas petition. Further, there is no evidence that Smith filed in 2015 a second application for post-conviction relief relating to his simple robbery and second degree battery convictions. The state district court has no record of such a filing and petitioner has not presented a copy of the alleged second application to **any** court. In any event, Smith has not alleged any state-created impediment prevented him from filing his habeas petition from the over two-year time-period of

---

[33] Rec. Doc. 3, p. 13.

November 9, 2012, when the Louisiana Supreme Court denied his writ application seeking review of the denial of his August 2011 application for post-conviction relief, until January 2015 when he allegedly filed a second application for post-conviction relief.[34] Therefore, Section 2244(d)(1)(B) is inapplicable.

The Court next considers equitable tolling. The United States Supreme Court has expressly held that the AEDPA's statute of limitations is subject to equitable tolling. Holland v. Florida, 560 U.S. 631, 645 (2010). That said, a petitioner bears the burden of proof to establish entitlement to equitable tolling, Alexander v. Cockrell, 294 F.3d 626, 629 (5th Cir. 2002), and, frankly, "equitable tolling is unavailable in most cases...." Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999); accord Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998) (holding that the AEDPA's statute of limitations can be equitably tolled "in rare and exceptional circumstances"). Specifically, "a petitioner is entitled to equitable tolling only if he shows both that (1) he has been pursuing his rights diligently, **and** (2) some extraordinary circumstance stood in his way and prevented timely filing." Holland, 560 U.S. at 649 (emphasis added; internal quotation marks omitted). "[E]quitable tolling applies principally where the defendant actively misleads the plaintiff about the cause of action or prevents the plaintiff from asserting his rights in some extraordinary way." Jones v. Lumpkin, --- F. 4th ---- 2022 WL 43169, at *3 (5th Cir. Jan. 5, 2022) (citations omitted). Regarding the two prongs of the Holland test, the United States Supreme Court has explained:

> [W]e have expressly characterized equitable tolling's two components as "elements," not merely factors of indeterminate or commensurable weight. Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005)

---

[34] The Court notes that Smith previously filed five other habeas petitions related to four other state court convictions. See Smith v. Cain, 2:10-cv-409 "F"(2) (2004 conviction for felon in possession of a firearm); Smith v Cain, 2:10-cv-413 "F"(4) (two public intimidation convictions from 2003); Smith v. Cain, 2:12-2086 "F"(2) (2002 conviction for possession of cocaine); Smith v. Cain, 2:12-2226 "F"(2) (second petition relating to 2002 conviction for possession of cocaine); Smith v. Cain, 19-cv-839 "I"(5) (2008 conviction for first degree murder).

10

> ("Generally, a litigant seeking equitable tolling bears the burden of establishing two elements").  And we have treated the two requirements as distinct elements in practice, too, rejecting requests for equitable tolling where a litigant failed to satisfy one without addressing whether he satisfied the other.  See, e.g., Lawrence v. Florida, 549 U.S. 327, 336-337, 127 S.Ct. 1079, 166 L.Ed.2d 924 (2007) (rejecting equitable tolling without addressing diligence because habeas petitioner fell "far short of showing 'extraordinary circumstances' "); Pace, supra, at 418, 125 S.Ct. 1807 (holding, without resolving litigant's argument that he had "satisfied the extraordinary circumstance test," that, "[e]ven if we were to accept [his argument], he would not be entitled to relief because he has not established the requisite diligence").

Menominee Indian Tribe of Wisconsin v. United States, 577 U.S. 250, 256 (2016).[35]  Here, Smith has not met either prong.

In the instant case, Smith brought forth no evidence whatsoever demonstrating that he is entitled to such tolling, and this Court knows of no reason that would support equitable tolling of the statute of limitations.  He has shown no extraordinary circumstance that stood in his way and prevented him from timely filing his habeas petition.

Smith also cannot meet the "diligence" prong of the Holland analysis.  Regarding the diligence requirement, a petitioner need not show that he exercised the "maximum feasible diligence;" rather, "[t]he diligence required for equitable tolling purposes is reasonable diligence." Holland, 560 U.S. at 563 (quotation marks omitted).  Nonetheless, the undersigned cannot say that Smith exercised even reasonable diligence in this case for the following reasons.

Even accepting as true Smith's allegation that he filed a second application for post-conviction relief with the state district court in January 2015, again, Smith took **no action** in either state or federal court from the time the Louisiana Supreme Court denied his writ application related to the denial of his first application for post-conviction relief on November 9, 2012, until January

---

[35] Menominee Indian Tribe was not a habeas corpus case.  However, its equitable tolling discussion is expressly based on the Supreme Court's interpretation of Holland; therefore, the reasoning therein is applicable to habeas cases.  See, e.g., Brian R. Means, Federal Habeas Manual § 9A:83 (May 2020 Update).

11

2015.  That is fatal, because far shorter periods of inactivity have been found to defeat requests for equitable tolling.  See, e.g., Tsolainos v. Cain, 540 F. App'x 394, 399-400 (5th Cir. 2013) ("We have held that state prisoners who were aware that their state post-conviction proceedings were no longer pending and waited to file federal habeas petitions between four and six months after the AEDPA limitation period began to run did not exercise reasonable diligence.").  Simply put: "[e]quity is not intended for those who sleep on their rights."  Mathis v. Thaler, 616 F.3d 461, 474 (5th Cir. 2010) (quotation marks omitted).

Lastly, the Court notes that a petitioner can overcome the AEDPA's statute of limitations by asserting a convincing claim of "actual innocence" under McQuiggin v. Perkins, 569 U.S. 383 (2013).  In Perkins, the United States Supreme Court held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in Schlup[ v. Delo, 513 U.S. 298 (1995) and House[ v. Bell, 547 U.S. 518 (2006)], or, as in this case, expiration of the statute of limitations."  Perkins, 569 U.S. at 386.  Here, it appears that Smith claims that he is actually innocent of the crimes at issue.

In assessing such a claim of actual innocence, a federal habeas court normally first examines the evidence presented at trial and on which the petitioner's conviction was based.  See, e.g., Johnson v. Cain, Civ. Action No. 14-543, 2015 WL 4528889, at *3 (E.D. La. July 27, 2015), aff'd, 667 F. App'x 474 (5th Cir. 2016); Lyles v. Tanner, Civ. Action No. 13-655, 2014 WL 4674673, at *6 (E.D. La. Sept. 17, 2014).

As noted, Smith was convicted of simple robbery and second degree battery.  Pursuant to La. Rev. Stat. § 14:65, "[s]imple robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, but not armed with a dangerous weapon."  Under Louisiana law, a second degree

battery occurs when "the offender intentionally inflicts serious bodily injury." La. Rev. Stat. § 14:34.1.

At trial, Detective Stephen Gaudet testified that he investigated the crimes at the St. Tammany Parish Jail on October 17, 2007.[36] He obtained a DVD of the video surveillance capturing the events that occurred before, during and after the attack of inmates Anthony Ruple and Joseph Martin.[37] The twenty-two minute video was played for the jury.[38] According to Gaudet, cell A-106 was assigned to Smith and Ruple.[39] Gaudet testified that the video showed Smith throwing a punch at Ruple and taking Ruple's bag of commissary items from cell A-106 and tossing the bag into cell A-105.[40] The video further showed inmate Joshua Cox retrieve the bag and take it into cell A-102.[41] Gaudet showed Martin and Ruple photographs of 16 black inmates and they identified Smith as the perpetrator.[42] Some of Ruple's commissary items were found in cell in A-102.[43]

Anthony Ruple testified that he shared a cell with Smith.[44] On the day of the crimes, Ruple bought $75 worth of commissary items and left half of the items in a friend's cell because he was afraid Smith would have his nephews take his things.[45] Ruple then went to his cell and Charlie Brown and Smith told him that they were going to take his commissary items.[46] Smith and Ruple struggled over the bag of items, and Smith ultimately took it and threw it into cell A-105.[47] Smith

---

[36] State Rec., Vol. 2 of 7, trial transcript of February 28, 2008, at p. 40.
[37] Id., at p. 43.
[38] Id., at pp. 44-62.
[39] Id., at p. 46.
[40] Id., at pp. 58, 81-84, 87, 89.
[41] Id., at pp. 84-85.
[42] Id., at pp. 63-67.
[43] Id., at pp. 66-68.
[44] Id., at p. 127.
[45] Id.; State Rec., Vol. 3 of 7, trial transcript (con't) of February 28, 2008, at pp. 136-37.
[46] State Rec., Vol. 3 of 7, trial transcript (con't) of February 28, 2008, at pp. 128-29.
[47] Id., at pp. 129, 132, 137 , 142, 149.

13

then chased Ruple and later attacked Martin.[48] Ruple was taken to the hospital and needed stitches for an injury to his lip.[49] According to Ruple, Martin sustained a broken nose.[50]

Deputy Michael Bonilla, a correctional officer, was the first officer to respond to the scene and witnessed Smith punching Martin, who was face down on the ground.[51] He testified that Martin was injured and transported to the hospital.[52]

Joseph Martin testified that he saw Ruple, Smith and Brown in a cell and pulled Brown out so the fight would be one-on-one.[53] Martin then went to watch television.[54] Smith sucker punched him, put him in a choke hold, and told him to "die."[55] Smith also kicked him in the head.[56] Martin suffered a broken nose and lacerations that required stitches.[57]

Smith testified and admitted to fighting with Martin, but denied taking Ruple's commissary items.[58] He admitted that the surveillance video showed him kicking Martin in the head.[59]

Therefore, ample evidence of Smith's guilt, including the surveillance video which captured the crimes, was introduced at trial, and so he faces a substantial challenge to establish a viable "actual innocence" claim. To do so, he must present the Court with new evidence of his innocence – and that new evidence must be particularly compelling. Indeed, the United States Fifth Circuit Court of Appeals has explained:

> This exception's demanding standard requires evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also

---

[48] Id., at p. 132.
[49] Id., at p. 135.
[50] Id.
[51] Id., at pp. 155-56.
[52] Id., at p. 160.
[53] Id., at pp. 169-70.
[54] Id., at p. 171.
[55] Id., at p. 172.
[56] Id., at p. 174.
[57] Id., at pp. 173, 179.
[58] Id., at p. 193.
[59] Id., at p. 205.

> satisfied that the trial was free of nonharmless constitutional error. The standard is seldom met.
>
> An actual-innocence claim is only established when it is shown that, in the light of newly-discovered evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. Therefore, a credible claim must be supported by new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial. Actual innocence is then demonstrated only when the court scrutinizes the likely impact on reasonable jurors of the overall, newly supplemented record to conclude that, in the light of all evidence – both the evidence presented at trial and that newly discovered – no juror, acting reasonably, would have voted to find petitioner guilty beyond a reasonable doubt.

Floyd v. Vannoy, 894 F.3d 143, 154-55 (5th Cir. 2018) (citations, quotation marks, and brackets omitted). "Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." Schlup, 513 U.S. at 324.

Here, although Smith contends that he is innocent, he has presented **no new evidence whatsoever** in support of that contention. Accordingly, he has not met "the threshold requirement" for Perkins to apply. Perkins, 569 U.S. at 386.

Because Smith is not entitled to further statutory tolling, and because he has not established that he is eligible for equitable tolling or that he is actually innocent, his federal application for habeas corpus relief had to be filed no later than April 11, 2011, in order to be timely. Because his application was filed October 6, 2020, it was untimely.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Virgil Smith be **DISMISSED WITH PREJUDICE as untimely**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on

15

appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); see Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 1st day of February, 2022.

*Janis Van Meerveld*
**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**